UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

CHARLENE ROSETTE                              CIVIL ACTION

VERSUS

PNK (BATON ROUGE)                        NO.: 17-00015-BAJ-EWD
PARTNERSHIP

## RULING AND ORDER

Before the Court is the **Motion for Summary Judgment (Doc. 38)** filed by Defendant, PNK (Baton Rouge) Partnership, which seeks dismissal of Plaintiff Charlene Rosette's Title VII discrimination and retaliation claims. Plaintiff opposes the motion. (Doc. 40). For the reasons that follow, the Motion for Summary Judgment is **GRANTED** and the action is **DISMISSED**.

I. BACKGROUND[1]

Beginning on August 16, 2012, Plaintiff, a black female, worked as a server in the L'Auberge Casino & Hotel's Bon Temps Buffet. (Doc. 38-8). The chain of events that led to this litigation began when Plaintiff made reports to management and human resources officials, alleging that one of her supervisors was showing up to work drunk and stealing employees' tips. (Doc. 45-1 at pp. 14–15, 46–47; Doc. 45-2

---

[1] Local Civil Rule 56(b) requires "[e]ach copy of the papers opposing a motion for summary judgment [to] include a separate, short and concise statement of the material facts as to which the opposition contends there is a genuine issue to be tried." Plaintiff failed to file the required statement. Thus, the Court, in its discretion, could deem all facts in Defendant's Statement of Uncontested Material Facts (Doc. 38-41) admitted. L. Civ. R. 56(b). Given the voluminous filings in this case, however, the Court will examine the record to see if it supports Plaintiffs' version of events.

at pp. 1–3 (email dated May 29, 2014)). The record does not reveal what became of these reports.

Relevant to Plaintiff's claims, she asserts that in the fall of 2014, she and another employee were appointed lead servers.[2] (Doc. 45-1 at p. 27). However, Plaintiff insists that she was demoted after complaining that she did not receive a pay increase upon her promotion. (*Id.*). Defendants claim that she never held the position of lead server and that instead she was engaged in a "trial period" to determine if she was suited for the position of lead server. (Doc. 38-20 at p. 8).

On March 4, 2015, Defendant issued a "Final Notification" warning to Plaintiff based on a purported outburst on February 28, 2015. (Doc. 38-15 at p. 1). Plaintiff disputes her culpability, claiming that she was not culpable for the argument described in her record of counseling and that she should not have been punished. (Doc. 45-5 at pp. 1–4). The white female employee who had the altercation with Plaintiff also received a "Final Notification" for the incident. (Doc. 38-16 at p. 1).

On August 28, 2015, Defendant terminated Plaintiff's employment. (Doc. 38-9 at p. 1). Plaintiff's personnel file indicates that she was terminated for a violation of company policy. (*Id.*). Defendants allege that Plaintiff was terminated for taking an unclaimed tip of $3.00 that did not belong to her.[3] (Doc. 38-4 at ¶ 16; Doc. 38-25

---

[2] Although the time period during which Plaintiff asserts she held the position of lead server is unclear, it appears that it was during the fall of 2014. (Doc. 38-20 at ¶ 8; Doc. 45-4 at p. 1). Another individual had been hired to the lead server position by December 18, 2014. (*Id.* ¶ 9).

[3] Waiters at the buffet received tickets for tips that had been left by credit card. (Doc. 38-20 at ¶ 12; Doc. 38-28 at p. 1; Doc. 38-29 at pp. 1–2). Waiters could then redeem these tickets for cash by signing out for their tips with the cashier at the end of their shifts. (Doc. 38-29 at pp. 1–2). Only the server who received the tip could sign out for it. (*Id.* at p. 2). Any unclaimed tips were to be deposited in the casino cage for their owners to claim at a later time. (*Id.*).

at p. 1). Defendant admits that she signed for a tip even though she did not have a ticket for it, and that she was aware that signing for a tip without a ticket was against company policy. (Doc. 45-1 at p. 49). However, Plaintiff asserts that she believed the tip was hers when she signed for it. (*Id.*) Defendants claim that their investigation revealed Defendant had likely violated the policy on multiple occasions.[4] (Doc. 38-4 at ¶ 13).

Plaintiff filed two charges of discrimination with the Equal Employment Opportunity Commission ("EEOC") relating to Defendant. (*See* Docs. 1-4 & 1-5). The first charge, filed on March 26, 2015, indicated that the discrimination was based on retaliation. (Doc. 1-4 at p. 1). In the "particulars" section of the charge sheet, Plaintiff described the basis of her charge:

> I. I have been employed by [Defendant] as a Server . . . . On Tuesday, March 10, 2015, I reported Assistant Manager Derek Gaspard (White) for stealing servers; tips to Human Resources manager Kizzy Smith. On Sunday, March 22, 2015, Mr. Gaspard approached me and said, "I do not like you. I am tired of you. I promise things are not going to turn out good for you if you keep messing with me." Mr. Gaspard used intimidation tactics and also harassed me while working tables. I sent an E-mail to Human Resources, Ms. Kizzy Smith, and she failed to respond to my complaint.
>
> II. [Defendant] has failed to respond to the intimidation and harassment.
>
> III. I believe [Defendant] has violated Title VII of the Civil Rights Act of 1964, as amended, by using intimidation in retaliation against me for reporting Mr. Gaspard stealing tips.

(*Id.*).

---

[4] The human resources director who lead the investigation states in her affidavit that Plaintiff "admitted . . . that she routinely claimed unclaimed tips." (Doc. 38-4 at ¶ 13).

Following her termination, Plaintiff filed a second EEOC charge on October 5, 2015. (Doc. 1-5 at p. 1). That charge again indicated that Plaintiff was bringing a charge based solely on retaliation. (*Id.*). In the "particulars" section of that charge, Plaintiff indicated that she was suspended and discharged for filing her previous EEOC complaint. (*Id.*).

Plaintiff filed suit in this Court, alleging that she was discriminated against on the basis of race and that she was retaliated against for reporting her manager and filing EEOC charges, all in violation of Title VII. (Doc. 8 at ¶¶ 30–39).

## II. LEGAL STANDARD

Pursuant to the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether the movant is entitled to summary judgment, the court views the facts in the light most favorable to the non-movant and draws all reasonable inferences in the non-movant's favor. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997).

After a motion for summary judgment is filed, the non-movant "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal citations omitted). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Austin v. Kroger Tex., L.P.*, 846 F.3d 326, 328 (5th Cir. 2017) (quoting Gates, 537 F.3d at 417). At this stage, however, the court does

not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

On the other hand, the non-movant's burden is not satisfied by some metaphysical doubt as to the material facts, or by conclusory allegations, unsubstantiated assertions, or a mere scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (internal quotations omitted). Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In other words, summary judgment will lie only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." *Sherman v. Hallbauer*, 455 F.2d 1236, 1241 (5th Cir. 1972).

### III. DISCUSSION

#### A. Race Discrimination Claim

Defendant argues that Plaintiff's race discrimination claim is barred because she never filed a charge of race discrimination with the EEOC and alternatively, she has failed to establish a *prima facie* case of race discrimination. (Doc. 38-2 at pp. 7–8). Plaintiff, on the other hand, insist that her intake questionnaire and her emails claiming race discrimination were enough to put the EEOC on notice regarding her discrimination claims. (Doc. 40-1 at pp. 3–4).

Before a Plaintiff can bring a Title VII claim in federal court, she must exhaust administrative remedies with the EEOC. *See* 42 U.S.C. § 2000e-5(f)(1); *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378–79 (5th Cir. 2002). Failure to exhaust is an absolute bar to claims under Title VII. *See Fitzgerald v. Sec'y, U.S. Dep't of Veterans Affairs*, 121 F.3d 203, 206 (5th Cir. 1997). The United States Court of Appeals for the Fifth Circuit has noted the tension inherent in Title VII's dual policy goals of broadly protecting the rights of unsophisticated complainants and providing an opportunity for non-judicial resolutions of complaints through the EEOC's administrative remedies. *See Pacheco v. Mineta*, 448 F.3d 783, 788–89 (5th Cir. 2006). Therefore, when determining whether a plaintiff exhausted a claim with the EEOC, a court's review should not be limited "solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which 'can reasonably be expected to grow out of the charge of discrimination.'" *Id* at 789 (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)). Put simply, a court should look to the substance, not the label, of the EEOC complaint. *Id.*

Even the most generous reading of Plaintiff's EEOC charge would not create a reasonable expectation that a race discrimination claim would grow out of the facts underlying Plaintiff's charge. *See Id.* Nowhere in Plaintiff's charges does she even mention race, apart from a parenthetical description of the race of her manager. (See Doc. 1-4 at p. 1). Plaintiff's description of the events states only that she "suffered intimidation" and "retaliation" for "reporting Mr. Gaspard stealing tips," and that she

was discharged in retaliation for filing her previous EEOC charge. (Doc. 1-4 at p.1; Doc. 1-5 at p. 1). In the "charge" box of her EEOC forms, Plaintiff checked only the box marked "retaliation." (Doc. 1-4 at p. 1; Doc. 1-5 at p. 1). Courts have routinely found that plaintiffs have failed to exhaust administrative remedies under similar circumstances. *See Teffra v. N. Tex. Tollway Auth.*, 121 F. App'x 18, 21 (5th Cir. 2004) (unpublished) (per curiam) (holding that a plaintiff failed to exhaust his administrative remedies for his retaliation claim where he "checked 'retaliation' on the *pre-charge EEOC form,* [but] he did *not* do so on the EEOC charge"); *Luna v. Lockheed Martin Corp.*, 54 Fed. App'x 404, 404 (5th Cir. 2002) (unpublished) (per curiam) (holding that a plaintiff failed to exhaust his claim of national-origin discrimination, where the plaintiff checked only the box for retaliation on his EEOC charge); *May v. Fedex Freight Se., Inc.*, 649 F. Supp. 2d 451, 455 (M.D. La. 2009) ("The fact that plaintiff failed to check the box by 'Retaliation' and make any other allegations of retaliation with respect to her discrimination claims confirms that she has failed to exhaust administrative remedies on this claim.").

However, the United States Court of Appeals for the Fifth Circuit has recently held that a Plaintiff's intake questionnaire can be considered a part of the formal charge when it is submitted to the EEOC along with the formal charge. *Patton v. Jacobs En"g Grp., Inc.*, 874 F.3d 437, 443 (5th Cir. 2017). In Plaintiff's intake questionnaire, dated March 23, 2015, she checked both the "race" and "retaliation"

boxes and claimed that she was treated unfairly because she was black.[5] (Doc. 45-18 at p. 2). The instant case is distinguishable from *Patton* because, where the EEOC and his employer considered Patton's claims that were included in the intake questionnaire but not his charge, *see id.*, neither the EEOC nor Defendant addressed the generalized claims of racial discrimination in the intake form that were not included in the charge. (Doc. 38-38 at p. 1; Doc. 38-39 at p. 1 (noting that the EEOC gave Plaintiff an opportunity to present additional evidence but that she did not do so)). Still, the Court will assume that Plaintiff exhausted her administrative remedies.

Even if the Court assumes that Plaintiff did exhaust her claim of discrimination, her claim still fails because she has not established a *prima facie* case of race discrimination. To prove racial discrimination under Title VII, Plaintiff must establish that she is (1) "a member of a protected class" (2) "was qualified for the position" (3) "was subject to an adverse employment action"; and (4) "other similarly situated persons were treated more favorably." *Septimus v. Univ. of Hous.*, 399 F.3d 601, 609 (5th Cir. 2005).

Plaintiff's primary problem is that she has failed to identify a proper comparator—someone "similarly situated" who was "treated more favorably." *Id.* Comparators must be treated more favorably "under nearly identical circumstances." *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009) (quoting *Little v. Republic*

---

[5] Although Plaintiff's intake questionnaire is dated three days before her charge, a stamp on the cover of the intake questionnaire indicates that the EEOC received it on the same day as her charge. (Doc. 45-18 at p. 1).

8

*Red. Co., Ltd.*, 924 F.2d 93, 97 (5th Cir. 1991)). Comparators should share the same responsibilities, supervisors, and have comparable violation histories. *Id.* In Plaintiff's opposition, the only comparator she names is the white female cashier with whom she allegedly had an altercation on February 28, 2015.[6] (Doc. 40-1 at pp. 11–12). Yet, Plaintiff and the cashier received the *same* treatment for the *same* incident; both received identical "Final Notification" warnings. (Doc. 38-15 at p. 1; Doc. 38-16 at p. 1). Although another waitress claims that the cashier was more at fault than Plaintiff, that waitress does not dispute that Plaintiff said something to the cashier outside the scope of her authority as a waiter, which caused the cashier to get upset and yell in front of customers. (Doc. 45-16 at pp. 21–23). Assuming that the cashier was more culpable, her punishment was more severe because she received a "Final Notification" without any prior disciplinary history (Doc. 51-1 at p. 1), while Plaintiff had two prior disciplinary reports filed against her. (Doc. 38-12 at p. 1; Doc. 38-13 at p. 1). This difference in violation history also weakens the cashier's usefulness as a comparator. *See Lee*, 574 F.3d at 260. Because Plaintiff has failed to point to a proper comparator, she has failed to establish a *prima facie* case of race discrimination.

### B. Retaliation Claim

Title VII protects employees (1) who opposed any employment practice made unlawful by Title VII (the "opposition clause")[7] or (2) who "made a charge, testified,

---

[6] Plaintiff's Amended Complaint lists her supervisor, Derek Gaspard as a comparator (Doc. 8 at ¶ 34); however, supervisors are not proper comparators. *See Crosby v. Computer Sci. Corp.*, 470 F. App'x 307, 309 (5th Cir. 2012) (unpublished) (per curiam).

[7] Although the statutory language of the "opposition clause" suggests that an employee is only protected from retaliation if the activity opposed is actually unlawful, every circuit has held that a

9

assisted, or participated in any manner in an investigation, proceeding, or hearing" (the "participation clause"). 42 U.S.C. § 2000e-3(a); *see also EEOC v. Rite Way Serv., Inc.*, 819 F.3d 235, 239 (5th Cir. 2016). To make a *prima facie* case of retaliation under Title VII, a plaintiff must show: (1) that she engaged in an activity protected by Title VII, (2) that her employer took an adverse employment action against her, and (3) that a causal link existed between the protected activity and the adverse action. *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007); *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471 (5th Cir.2002).

If a plaintiff proves her *prima facie* case of retaliation, the burden shifts to the defendant to demonstrate a legitimate, non-retaliatory purpose for the employment action. *McCoy*, 492 F.3d at 557. If a defendant satisfies this burden, then a plaintiff must prove that the employer's stated reason for the adverse action is not true but instead is a pretext for the real retaliatory purpose. *Id.*

### 1. *Engaged in Protected Activity*

To present a *prima facie* case under the participation clause, Plaintiff must first establish that she engaged in protected activity. *Id.* Defendant argues that the activities Plaintiff opposed fall outside of Title VII's protections and that Plaintiff's facially invalid EEOC charge cannot form the basis of a participation clause claim. (Doc. 38-2 at pp. 23–25). Plaintiff insists that she is protected under both the opposition and participation clauses. (Doc. 40-1 at pp. 13, 16).

---

plaintiff needs only a "reasonable belief" that the activity she opposed was unlawful in order to be protected from retaliation. *See EEOC v. Rite Way Serv., Inc.*, 819 F.3d 235, 240 (5th Cir. 2016).

### a. Opposition Clause

To state a *prima facie* case of retaliation under the opposition clause, Plaintiff must have a "reasonable belief" that she opposed activity made unlawful under Title VII. *See Rite Way Serv., Inc.*, 819 F.3d at 240. Title VII is not a generalized employee grievance law: It serves the critical purpose of protecting individuals from discrimination on the basis of race, color, religion, sex, and national origin. *See* 42 U.S.C. § 2000e-2. Plaintiff's complaints to management of a supervisor stealing tips and showing up drunk fall squarely outside the scope of Title VII's protections—however unfair those actions may have been to Plaintiff.[8] *See Armstrong v. K & B La. Corp.*, 488 F. App'x 779, 782 (5th Cir. 2012) (unpublished) (per curiam) (holding that absent any evidence of racial animus, an employer's animosity does not establish an "objectively reasonable belief" that an employee was retaliated against under the opposition clause); *Richard v. Cingular Wireless LLC*, 233 F. App'x 334, 338 (5th Cir. 2007) (unpublished) (per curiam) ("complaining of unfair or undesirable treatment not addressed by Title VII will not suffice" to state a claim under the opposition clause); *Wilson v. Delta State Univ.*, 143 F. App'x 611, 613 (5th Cir. 2005) (unpublished) (per curiam) (holding that a plaintiff failed to establish a *prima facie* case of retaliation because the plaintiff could not have had a reasonable belief that a manager hiring his lover was unlawful under Title VII).

---

[8] Plaintiff's emails to management and human resources dated May 29, 2014 (Doc. 45-2); September 4, 2014 (Doc. 45-3); January 12, 2015 (Doc. 45-4) contain no mention of any activity made unlawful under Title VII.

11

Ultimately, however, Plaintiff did complain to management of her belief that she was subject to race discrimination, stating that her supervisors preferred another server "because she is white." (Doc. 45-5 at p. 3). Plaintiff reported this to human resources on March 9, 2015. (*Id.* at p. 1). As the Court previously discussed, Plaintiff's EEOC intake questionnaire also alleged race discrimination. (Doc. 45-18 at p. 2). Therefore, Plaintiff opposed an activity made unlawful under Title VII. *McCoy,* 492 F.3d at 557.

**b. Participation Clause**

Ordinarily, filing a charge with the EEOC is protected activity under the participation clause.[9] *See* 42 U.S.C. § 2000e-3(a). Plaintiff filed her first charge with the EEOC on March 26, 2015 (Doc. 1-4 at p. 1); therefore, the Court finds that Plaintiff engaged in protected activity under the participation clause.

### 2. *Suffered an Adverse Employment Action*

The second element of a *prima facie* case is that Plaintiff suffered an adverse employment action. *See McCoy,* 492 F.3d at 557. Plaintiff suffered an adverse employment action when she was terminated. *See Montemayor v. City of San Antonio,* 276 F.3d 687, 692 (5th Cir. 2001). Plaintiff further alleges that she faced

---

[9] The United States Court of Appeals for the Third Circuit has held that the filing a facially invalid EEOC charge "does not constitute 'participation' for the purposes of Title VII" retaliation. *Slagle v. Cnty. of Clarion,* 435 F.3d 262, 268 (3d Cir. 2006). The United States Court of Appeals for the Fifth Circuit has never addressed this issue. It appears to this Court, however, that the Third Circuit's holding runs counter to the plain language of the participation clause and the broad construction courts have given retaliation claims. *See* 42 U.S.C. § 2000e-3(a) (protecting an employee who "ma[kes] a charge"); *Rite Way Serv., Inc.,* 819 F.3d at 240 (applying a broad interpretation of the opposition clause). But the Court need not decide this issue because it previously determined that Plaintiff did bring an EEOC charge based on race discrimination.

adverse employment action when she was (1) demoted from the position of lead server and (2) received disciplinary charges.[10] (Doc. 40-1 at pp. 19, 21). These actions occurred before Plaintiff first complained to human resources about race discrimination on March 4, 2015 (Doc. 45-5 at p. 3); notified her employer of her intent to file a charge with the EEOC on March 19, 2015 (Doc. 45-6 at p.1); or filed her first charge with the EEOC on March 26, 2015 (Doc. 1-4 at p. 1). Plaintiff's alleged demotion and the disciplinary actions against cannot constitute adverse employment actions because they occurred before Plaintiff engaged in protected activity under the opposition or participation clause.[11] *Ellis v. Compass Grp. USA, Inc.*, 426 F. App'x 292, 297 (5th Cir. 2011) (unpublished). Accordingly, the Court finds that Plaintiff's termination was the only adverse employment action for her retaliation clause claim.

### 3. *Causation*

Finally, Plaintiff must establish a causal link between the adverse action and the protected activity. *See McCoy,* 492 F.3d at 557. The Court will assume that the relatively close time period between the filing of her first charge and her termination—approximately four months—establishes causation at this stage. *See Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 948 (5th Cir.

---

[10] The record shows that Defendant issued Plaintiff's final written disciplinary report March 4, 2015. (Doc. 38-15 at p. 1).

[11] Plaintiff generally alleges that she suffered from retaliatory harassment, but apart from the incidents listed above, Plaintiff cites no specific occurrences after the filing of her initial EEOC complaint that would warrant the Court finding retaliatory harassment. (Doc. 40-1 at p. 22); *see also Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68–69 (2006) (holding that retaliatory harassment must be "materially adverse" based on an "objective standard[]" that the conduct would "dissuade a reasonable worker from making or supporting a charge of discrimination").

2015) ("In [the Fifth Circuit], temporal proximity between protected activity and alleged retaliation is sometimes enough to establish causation at the prima facie stage"); *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001) ("[A] time lapse of up to four months has been found sufficient to satisfy the causal connection for summary judgment purposes." (quoting *Weeks v. NationsBank, N. Am.*, No. 98-CV-1352M, 2000 WL 341257, at *3 (N.D. Tex. Mar. 30, 2000))). Therefore, the Court finds that Plaintiff has stated a *prima facie* case of retaliation.

### 4. Legitimate, Non-Discriminatory Reason

Because the Court finds that Plaintiff has met her burden of establishing her *prima facie* case, the burden now shifts to Defendant to articulate a legitimate, non-discriminatory reason for her termination. *McCoy*, 492 F.3d at 557. Defendant has done so by alleging that Plaintiff's termination was justified because she violated company policy by taking tips that did not belong to her. (Doc. 38-4 at ¶ 16).

### 5. Pretext

The burden now shifts back to Plaintiff to establish that the Defendant's proffered reasons are pretextual. *McCoy*, 492 F.3d at 557. To establish pretext, Plaintiff must at least raise a genuine dispute of material fact that unlawful retaliation was the but-for cause of her termination. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013); *Chavez v. City of San Antonio*, 657 F. App'x 246, 248 (5th Cir. 2016) (unpublished) (per curiam). "[T]he combination of suspicious timing with other significant evidence of pretext[] can be sufficient to survive summary judgment." *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 409 (5th

Cir. 1999). The Court finds that Plaintiff fails to raise a genuine dispute of material fact that Defendant's reasons for letting her go were pretextual. Although a gap of four months may be sufficient to state a *prima facie* case of employment discrimination, *see Evans*, 246 F.3d at 354, the lack of any specific, articulable suspicious circumstances in the intervening four months militates against a finding of pretext. *See Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007) ("temporal proximity alone is insufficient to prove but for causation.").

At bottom, Plaintiff disputes the veracity and severity of the claim that she took another server's tips, arguing that she "can identify several pieces of conflicting evidence . . . to bring the veracity [of] Defendant's allegations into serious question." (Doc. 40-1 at p. 26). But Defendant's Human Resources Director conducted an investigation into the matter, interviewed multiple witnesses, and concluded that Plaintiff had violated company policy and that termination was warranted. (Doc. 45-22 at ¶¶ 12–14). Even if the Court credited Plaintiff's unsubstantiated claims in her motion for summary judgment that the investigation came to an erroneous conclusion, "evidence that the employer's investigation merely came to an incorrect conclusion does not establish a [discriminatory] motivation behind an adverse employment decision." *Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005). However, Plaintiff undercuts her own argument that the investigation came to an erroneous conclusion because she admitted in her deposition that she had knowingly violated company policy (Doc. 45-1 at p. 49), and Plaintiff had already received her "Final Notification" warning before she had engaged in activity protected

by Title VII. (Doc. 38-16 at p. 1). Plaintiff's generalized allegation that there was a pattern and history of supervisors asking employees to lie and cover up incidents that occurred do not raise a general issue of material fact that her firing was a mere pretext. (Doc. 40-1 at p. 30). Therefore, Plaintiff has not met her burden of proof regarding pretext and her retaliation claim is dismissed.

IV. **CONCLUSION**

Accordingly,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (Doc. 38) is **GRANTED,** and the above-captioned matter is **DISMISSED WITH PREJUDICE**.

Baton Rouge, Louisiana, this 18th day of June, 2018.

**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**